IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | § | |
|---|---|---|
| JAMES SHANE WEEKS and | § | |
| MAXANN WEEKS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:15-cv-00588-O-BP |
| | § | |
| GREEN TREE SERVICING LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant's Motion for Summary Judgment (ECF No. 24), filed June 20, 2017 with Brief and Appendix in Support (ECF Nos. 25–26); and Defendant's Supplemental Brief and Appendix in Support (ECF No. 36), filed August 5, 2017. After considering the pleadings of the parties and applicable law, the undersigned RECOMMENDS that United States District Judge Reed O'Connor GRANT summary judgment to Defendant on all claims and counterclaims as there exists no genuine issue of material fact, and Defendant is entitled to judgment as a matter of law.

BACKGROUND

**I.     Procedural Background**

On May 5, 2015, Plaintiffs filed their Original Petition and Request for Disclosure in Cause No. 352-278-279-15, styled James Shane Weeks and Maxann Weeks v. Green Tree Servicing, LLC in the 352nd Judicial District Court of Tarrant County, Texas. ECF No. 1-2. On July 9, 2015, Plaintiffs filed their Amended Original Petition and Requests for Disclosure. ECF No. 1-8.

On August 5, 2015, Defendant Green Tree Servicing, LLC, n/k/a Ditech Financial, LLC ("Ditech") filed its counterclaim and timely removed Plaintiffs' suit to this Court. ECF No. 1. On October 2, 2015, Plaintiffs filed an Amended Complaint with Jury Demand. ECF No. 10.

On June 30, 2017, Ditech filed a Motion for Summary Judgment (ECF No. 24) with Brief/Memorandum in Support (ECF No. 25) and Appendix in Support (ECF No. 24). Plaintiffs filed their Response to the Motion for Summary Judgment (ECF No. 35) on August 4, 2017, and filed a Brief/Memorandum in Support (ECF No. 37) and Appendix in Support (ECF No. 38) on August 7, 2017.

Ditech filed a Motion for Leave to File Supplemental Brief and Appendix in Support of Motion for Summary Judgment on August 5, 2017. ECF No. 36. Plaintiffs filed a Response to the Motion for Leave, entitled Plaintiffs' Brief in Reply to Defendant's Supplemental Brief in Support of its Motion for Final Summary Judgment, on August 14, 2017. ECF No. 40. As Plaintiffs' Response was on the merits of Ditech's Supplemental Brief (ECF No. 36), the Court granted Ditech's Motion for Leave (ECF No. 36) in an Order entered on August 21, 2017. ECF No. 42. Ditech's Supplemental Brief and Appendix were thereby filed on August 21, 2017. ECF Nos. 43–44. Ditech additionally filed a Reply to Plaintiffs' Response on August 21, 2017, which included an Objection to Plaintiff's Summary Judgment Evidence, specifically Exhibits B-4 and B-5. ECF No. 45.

## II. Factual Background

On February 12, 2008, Plaintiffs executed a home equity note (ECF No. 26-2), a security instrument (ECF No. 26-3), an escrow waiver (ECF No. 26-4), and a notice of no other agreements (ECF No. 26-5) with Broad Loans, Inc. ECF No. 25 at 4–5. Plaintiffs were obligated under the terms of the note to pay the full monthly amount on the date that it came due or else they would

be in default. ECF No. 26-2 at 3. At some point, Flagstar became the servicer for this note. ECF No. 25 at 5. Ditech took over servicing of Plaintiffs' loan from Flagstar on January 1, 2013. ECF Nos. 26-1, 26-12, 26-13. Flagstar is not a named defendant in this case.

The Plaintiffs allege a number of improper contacts with their loan servicing providers. On October 1, 2012, Flagstar sent Plaintiffs two separate letters claiming Plaintiffs were in default, but with two different amounts allegedly owing. ECF No. 37 at 3. One letter stated that the deficiency was $4,114.57, and the other stated it was $6,220.02. *Id.*, No. 38 at 36–37. On December 3, 2012, Flagstar again sent two separate letters with two different default amounts: $7,281.07 and $4,185.00. ECF Nos. 37 at 3, 26-1 at 4, 26-9.

Plaintiffs apparently communicated with Ditech in February, March, and April of 2013. ECF No. 37 at 3–4. There is some confusion whether the February, March, and April contacts occurred in 2012, before Ditech took over servicing of the loan, or in 2013, after Ditech took over. Plaintiffs testified in their depositions and answers to interrogatories that the contacts took place in 2012, though Plaintiffs also then testified that the communications were with Ditech. ECF No. 36-1. Plaintiffs have stated that this was an "erroneous dating," and asserted that at least the April contact was in 2013. ECF 40 at 2. Construing the evidence in the light most favorable to the nonmovant, the Court resolves this dispute in favor of the Plaintiffs at this stage, though such would not necessarily be the case at trial. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988).

After Ditech began servicing the loan, Plaintiff Maxann Weeks ("Mrs. Weeks") contacted Ditech by phone in February of 2013. ECF No. 37 at 3. According to Mrs. Weeks, Ditech's representative told her there was a balance due on the loan and that Ditech would foreclose on the loan and sell her house in five days. *Id.* Mrs. Weeks testified that during this call one of Ditech's

3

representatives was very rude and asked her, "Don't you want to keep your house? Can you even pay for your house?" ECF No. 38-4 at 2.

In March of 2013, Mrs. Weeks again called Ditech, whose representative told her that money was owed on the account and the house would be foreclosed on in five days. ECF Nos. 37 at 3–4, 38-4 at 4. Mrs. Weeks challenged the representative on this information, as the Plaintiffs had made five payments from February 1 to March 1, 2013. ECF No. 37 at 3–4.

A representative of Ditech contacted Plaintiff James Weeks ("Mr. Weeks") on April 11, 2013. ECF No. 37 at 3. According to Mr. Weeks, the representative told him that $2,852 was owed on the note and that, if the balance was not received by April 16, 2013, the property would be foreclosed on. *Id.* Ditech's call notes indicate that Plaintiffs were informed that the property "will go into foreclosure in [the] next few days—Reason for past due." ECF No. 45 at 7.

Plaintiffs additionally allege that Flagstar and Ditech did not properly credit or apply multiple payments on the note. ECF No. 37 at 5–6. These errors allegedly resulted in incorrectly assessed late fees and inaccurately high balances. ECF No. 37 at 6.

For its part, Ditech denies making the statements to Plaintiffs and engaging in the actions regarding these contacts. ECF No. 45 at 4. Ditech asserts that Plaintiffs were behind in their payments in 2012, when Flagstar serviced the loan, and in 2013, when Ditech began servicing the loan. ECF No. 25 at 5. Ditech asserts that its representative spoke with Mr. Weeks on January 13, 2013, during which conversation Mr. Weeks said that he was struggling with his payments and wanted to schedule a payment plan, which he did. ECF No. 26-1 at 5. Among other notifications, Ditech sent Plaintiffs a Notice of Default and Right to Cure on February 13, 2013, notifying them that they were behind $2,616.38 in their payments. *Id.* at 6. Ditech asserts that its representative spoke with Mr. Weeks on March 5, 2013, at which point he "notified [Ditech] that he had to put a

stop payment on his payment to [Ditech] because he needed the money to survive." *Id*. On April 18, 2013, Mr. Weeks sent Ditech a "qualified written request" to inquire about the status of the account, and Ditech returned a response on April 29, 2013, that informed the Plaintiffs of the amounts due on their note, including late fees of $285.52. *Id.*, No. 46. Ditech sent Plaintiffs a second notice of default on June 13, 2013, claiming an amount due of $5,767.95. ECF No. 26-1 at 6.

## LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry for the Court to make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.

1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). The citations to evidence must be specific, and "a party must support each assertion by citing each relevant page of its own or the opposing party's appendix." Local Civil Rules of the Northern District of Texas 56.5(c).

**ANALYSIS**

This action concerns Plaintiffs' home equity loan, for which Ditech was the servicer. Plaintiffs claim three causes of action under Texas law: unreasonable collection efforts, intentional or negligent misrepresentation, and violation of the Texas Debt Collection Act. ECF No. 1-2 at 2–4; ECF No. 10. Ditech refutes these allegations and counterclaims for foreclosure. ECF Nos. 1-3, 1-9. As no dispute of material fact exists as to any of Plaintiffs' claims or Ditech's counterclaim, the undersigned recommends that summary judgment be granted for Ditech on all counts.

**I.     Summary judgment should be granted for Ditech on the tort of unreasonable collection efforts, as the facts alleged do not amount to a course of harassment of the Plaintiffs.**

Unreasonable collection efforts is an intentional tort that lacks clearly defined elements. *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.). The Fifth Circuit has noted that "a recent survey of Texas decisions indicates that the tort of unreasonable collection 'is intended to deter outrageous collection techniques,' particularly those involving harassment or physical intimidation." *Thomas v. EMC Mortg. Corp.*, 499 Fed. App'x. 337, 342 (5th Cir. 2012) (quoting *Hidden Forest Homeowners Ass'n v. Hern*, No. 4:10–CV–00551, 2011 WL 6089881, at *4 (Tex. App.—San Antonio 2011, no pet. h.)). The current Texas standard for the tort requires "a course of harassment that was willful, wanton, malicious, and intended to inflict

6

mental anguish and bodily harm." *Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n*, 509 F. App'x 367, 370 (5th Cir. 2013) (quoting *EMC Mortg. Corp.*, 252 S.W.3d at 868).

Actionable conduct includes harassing the defendant with repeated phone calls, letters, and, most egregiously, in-person visits. *See Bank of N. Am. v. Bell*, 493 S.W.2d 633, 635 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ) (in which harassing conduct included twenty to twenty-three phone calls in a ten-day period to the plaintiff's home and work, in addition to threatening in-person visits); *EMC Mortg. Corp.*, 252 S.W.3d at 869–70 (upholding the trial court's judgment that repeated visits from a large, intimidating man "exceeded the bounds of reason").

However, failing to clearly inform a debtor of the amount owed on the note and not approving a debtor for loan modification do not constitute unreasonable collection efforts. *Thomas*, 499 Fed. App'x. at 342. A reliance on oral representations from customer service representatives contradicted by the terms of the loan agreement and the notice of foreclosure likewise do not constitute unreasonable collection efforts, as a matter of law. *Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 330 (5th Cir. 2013).

Construing the evidence in the light most favorable to the nonmovant, the Court concludes that Ditech has not taken actions that amount to a course of harassment intended to inflict mental anguish and bodily harm. Plaintiffs have only asserted that Ditech made one collection call after it began servicing the loan, on April 11, 2013. ECF No. 37 at 3–4. All other contact was either initiated by the Plaintiffs or by the prior loan servicer, Flagstar. One telephone call does not establish a course of harassment.

Neither does the content communicated to Plaintiffs by Ditech establish a claim for unreasonable collection efforts. The most offensive communication that Plaintiffs have proven is that, when Mrs. Weeks called in February of 2013, one of Ditech's representatives was very rude

7

and asked her, "Don't you want to keep your house? Can you even pay for your house?" ECF No. 38-4 at 2. The only additional evidence Plaintiffs have brought forward shows that both Flagstar's and Ditech's communications with them were confusing. ECF No. 37 at 4–5; *see also* ECF No. 38-4 at 7. However, under *Thomas* and *Milton*, merely confusing or incorrect contacts by a party such as Ditech do not amount to unreasonable collection efforts that are willful, wanton, malicious, and intended to inflict mental anguish and bodily harm. Accordingly, summary judgment should be granted to Ditech on the Plaintiffs' claim of unreasonable collection efforts.

**II. Summary judgment should be granted for Ditech on intentional or negligent misrepresentation, as there is insufficient evidence of detrimental reliance or injury from that reliance by the Plaintiffs.**

The elements of a cause of action for intentional misrepresentation, also called fraud by misrepresentation, are: "(1) a material misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiffs' reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Bowman v. CitiMortgage Inc.*, 3:14-CV-4036-B, 2015 WL 4867746, at *5 (N.D. Tex. Aug. 12, 2015) (citing *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010)) (applying Texas law). The elements of a cause of action for negligent misrepresentation are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Plaintiffs' claim of misrepresentation, whether intentional or negligent, primarily depends on their assertion that Flagstar and Ditech communicated incorrect debt amounts and credited payments incorrectly. ECF No. 37 at 5–6. Plaintiffs also allege that Ditech threatened to sell their house within five days because they were in default. *Id.* However, assuming these were in fact errors, there is no evidence of Plaintiffs' reliance on such alleged misrepresentations or loss from such reliance, as the final elements of both negligent and intentional misrepresentation require. Plaintiffs seem to have disagreed with the amounts and claims allegedly asserted by Ditech from the start of Ditech's servicing of the loan, making it clear that Plaintiffs did not rely on representations that they believed to be false. Plaintiffs have offered no evidence that they acted or failed to act because of reliance on Ditech's misrepresentation. If Plaintiffs were harmed, it was by the incorrect accounting itself, not by any reliance on the incorrect accounting. The torts of negligent and intentional misrepresentation only allow recovery for harm that stems from a plaintiff's reliance on a defendant's misrepresentation. Because there is no evidence of such reliance by the Plaintiffs or any harm resulting from such reliance, summary judgment should be granted for Ditech.

### III. Summary judgment should be granted for Ditech on Plaintiffs' claims of violation of the Texas Debt Collection Act.

The Texas Debt Collection Act provides a cause of action when a debt collector uses a fraudulent, deceptive, or misleading representation that employs one of a number of violative practices. Tex. Fin. Code Ann. § 392.304 (West 2004). Plaintiffs claim two violations of this chapter: Section 392.304(a)(14), "falsely representing the status or nature of the services rendered by the debt collector or the debt collector's business"; and Section 392.304(a)(19), "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id.* The latter is a catchall provision, and as Plaintiffs have not divided the factual basis

for their claim in their briefing, the Court will presume that the Plaintiffs intended for both provisions to apply to each of their factual allegations. These factual allegations are (a) that Ditech's representative told Plaintiffs that a foreclosure would be completed within five days if Ditech did not receive payment, (b) that Plaintiffs did not receive an accounting, and (c) that Plaintiffs did not receive proper crediting of payments. The relevant legal authorities and the summary judgment evidence do not support recovery for the Plaintiffs.

### A. A threat of foreclosure when the borrower is in default is not a fraudulent, deceptive, or misleading representation under the TDCA.

Section 392.304 of the TDCA requires the debt collector to use a fraudulent, deceptive, or misleading representation. *Id.* While Plaintiffs have asserted their claim concerning the foreclosure threat under Section 392.304, Section 392.301 ("Threats and Coercion") is the more-often litigated section of the TDCA in cases concerning foreclosure threats. Section 392.301(a)(8) prohibits "threatening to take an action prohibited by law" pursuant to the collection of a debt. However, if the loan is in default, then threatening foreclosure is expressly permitted by the TDCA as a "contractual right of seizure, repossession, or sale that does not require court proceedings." *Id.* at § 392.301(b)(3); *see also Singha v. BAC Home Loans Servicing, L.P.*, 564 Fed. App'x. 65, 70 (5th Cir. 2014). Though Section 392.304 does not contain the explicit defense of Section 392.301, it is nevertheless clear that a party threatening foreclosure when the borrower is in default cannot be a fraudulent, deceptive, or misleading representation. It is, instead, the right of the lender or its authorized agent to foreclose the security interest if the borrower defaults on its obligation to pay its debt.

It is undisputed that Plaintiffs were in default on their loan when Ditech's allegedly illegal conduct occurred. Instead, Plaintiffs claim as the violative misrepresentation that Ditech's representative threatened that "a foreclosure would be completed within 5 days if the amount

demanded was not paid." ECF No. 37 at 6. Ditech denies this representation and claims that Plaintiffs were only told that the note "will go into foreclosure in [the] next few days—Reason for past due." ECF No. 45 at 7. As Plaintiffs argue, it certainly is true that a foreclosure under Texas law cannot be completed within five days and the house sold. However, even assuming that the communication was as Plaintiffs claim, Ditech was still within its legal right to threaten foreclosure under the law. The fact that the threatened occurrence was unlikely to occur as speedily as Ditech's representative stated does not create a genuine issue of material fact under the TDCA.

### B. That the Plaintiffs did not receive an accounting is not a violation of the TDCA, as failing to provide information is not a representation.

As stated above, TDCA § 392.304 creates a cause of action for fraudulent, deceptive, or misleading representations. Plaintiffs' claim that Ditech did not give them an accounting cannot be a violation of this Section. A lack of a representation cannot be a representation, let alone a fraudulent one. *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010) ("For a statement to constitute a misrepresentation under the TDCA, Defendants must have made a false or misleading assertion.").

As this part of Plaintiffs' TDCA claim fails as a matter of law, the summary judgment evidence need not be discussed. However, the Court notes that Ditech has provided evidence that an accounting was provided to the Plaintiffs on April 29, 2013, in the form of a response to a qualified written request from the Plaintiffs. ECF No. 46. Plaintiffs have offered no evidence to prove that they did not receive Ditech's response or that the response did not constitute a proper accounting.

### C. There is insufficient evidence to prove improper crediting of payments or an incorrect balance.

As noted above, Plaintiffs bear the burden of bringing forward evidence sufficient to show the existence of a genuine issue of material fact for trial. On the basic issues of the amount due and proper accounting for payment made, Plaintiffs have not met their burden. Plaintiffs first assert in their response that there were conflicting demands from the prior servicer, which does not support a violation on the part of Ditech. *See* ECF No. 37 at 7. More importantly, they assert that several payments were held in suspense but were not properly applied, and "[a]s a result the principle [sic] balance Ditech now claims is $107,153.92 when the balance ought to be $104,445.16." *Id.*

In support of their claim, Plaintiffs attach three spreadsheets as evidence. The first, titled Defendant's Account Ledger (ECF No. 38-6), appears to be a payment history provided by Ditech, and Ditech does not object to its inclusion in evidence. Plaintiffs claim that Ditech did not properly apply payments, but they fail to point out any particular line items or part of Defendant's Account Ledger that supports their claim that payments were improperly credited after being held in suspense. The bare assertion that the spreadsheet as a whole proves Ditech made an error does not satisfy the Plaintiffs' evidentiary burden to provide *specific* facts under *Ragas* and *Anderson*. As a result, there is insufficient evidence to prove that Ditech improperly credited payments in violation of the TDCA such that a fact issue exists on this claim.

In support for their claim that the principal balance is incorrect, Plaintiffs cite to two exhibits, titled Revise [sic] Account Ledger with Delays (ECF No. 38-7) and Revised Amortization Schedule (ECF No. 38-8), prepared by their counsel and attached to his affidavit (ECF No. 38-3). These exhibits are not properly explained or described in any way. Plaintiffs do not give the Court any guidance as to how they prove that the principal balance is incorrect or otherwise create a

genuine issue of material fact on any issue. Ditech objects to the admissibility of these exhibits (ECF No. 45 at 2–3), because the Plaintiffs did not provide any "evidence sufficient to support a finding that the matter in question is what its proponent claims" for Exhibits 38-7 and 38-8, as is required by Federal Rule of Evidence 901(a). The Court overrules Ditech's objection because, under Rule 56 of the Federal Rules of Civil Procedure, "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016). The Court cannot conclude on the record before it that the Plaintiffs could not lay the proper foundation or authenticate the exhibits such that they could be admitted in evidence at trial. Nevertheless, Exhibits 38-7 and 38-8 do not raise a fact issue on whether Ditech charged or represented an incorrect balance owing in violation of the TDCA.

## IV. Plaintiffs have failed to present evidence that Ditech ratified the conduct of the prior servicer.

In an attempt to expand Ditech's alleged improper conduct, Plaintiffs argue that Ditech ratified the conduct of Flagstar, the prior servicer of their note. ECF No. 40 at 2–3. "Ratification is the adoption or confirmation, by one with knowledge of all material facts, of a prior act which did not then legally bind that person and which that person had the right to repudiate." *EOG Res., Inc. v. Wall*, 160 S.W.3d 130, 138 (Tex. App.—Tyler 2005, no pet.). Plaintiffs have presented no evidence to prove that Ditech had the right to repudiate any known offensive conduct committed by Flagstar. There is no evidence that Ditech knew of an inaccurate balance from Flagstar when it began servicing the loan, which is the only conduct from Flagstar that Ditech could reasonably be accused of ratifying. *See* ECF No. 40 at 2–3. Plaintiffs have offered no evidence that Ditech's balance amount was in fact incorrect at the time of transfer. *See id.* Plaintiffs have only shown that Flagstar sent contradictory letters to the Plaintiffs, without making any showing that these

contradictions affected the actual balance Ditech told them they owed at the time it began servicing the loan. *See id.* Plaintiffs have failed to present evidence sufficient to raise a genuine issue of material fact that Ditech is liable to them based upon ratification of Flagstar's conduct.

**V.    Summary judgment should be granted to Ditech on its counterclaim for foreclosure, as all the evidence confirms that the loan is in default and Ditech is within its right to foreclose.**

The Texas Constitution protects homestead properties by providing that a home equity loan secured by a lien "may be foreclosed upon only by a court order." Tex. Const. art. XVI, § 50(a)(6)(D); *U.S. Bank Nat'l Ass'n v. Johnson*, 1:15-CV-788-RP, 2017 WL 598499, at *2 (W.D. Tex. Feb. 14, 2017). One method of foreclosure on such loans is "a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the security instrument and Tex. Prop. Code § 51.002." *Wells Fargo Bank v. Jackson*, 5:15-CV-00992-XR, 2016 WL 4991716, at *2–3 (W.D. Tex. Sept. 16, 2016); *see also* Tex. R. Civ. Pro. 735. Such an order confirms that the lender may, under the Texas Constitution, lawfully proceed with the non-judicial foreclosure sale of the property. *Metcalf v. Wilmington Sav. Fund Soc'y, FSB*, 03-16-00795-CV, 2017 WL 1228886, at *4 (Tex. App.—Austin Mar. 29, 2017, pet. denied).

In order to receive an order for foreclosure under Section 51.002, a security interest holder must demonstrate that: "(1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution; (3) [the borrowers] are in default under the note and security instrument; and (4) [the borrowers] received notice of default and acceleration." *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 Fed. App'x. 306 (5th Cir. 2014); *see also, e.g., TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, No. 3:14-CV-2589-M-BN, 2016 WL 2856006, at *3 (N.D. Tex. Apr. 18, 2016), *report and recommendation adopted sub nom. TFHSP, LLC v. U.S. Bank Nat'l Ass'n*, No. 3:14-CV-2589-M-BN, 2016 WL 2853565 (N.D.

Tex. May 13, 2016), *appeal dismissed* (July 20, 2016) ("To obtain a judicial foreclosure, [the security interest holder] must show (1) the existence of a note secured by real property; (2) that some part of the note is due and unpaid; and (3) that the real property subject to the lien is the same property that it seeks to foreclose.").

Ditech counterclaims for foreclosure and seeks a "non-judicial foreclosure order against Plaintiffs . . . under the Security Instrument and Tex. Prop. Code § 51.002." ECF No. 25 at 14. In support of its counterclaim, Ditech provides the following evidence: (1) Under the terms of the home equity note, Plaintiffs were obligated to pay the full monthly amount on the date that it came due or else they would be in default (ECF No. 26-2 at 3); (2) Plaintiffs did not pay the required monthly payment when it became due in February of 2013 and have not paid any monthly installments since that time (ECF No. 25 at 14); and (3) Ditech provided Plaintiffs with notice of their default on June 13, 2013 (ECF No. 26-18).

Plaintiffs do not dispute that a debt exists or that they are in default. Instead, they argue that, because Ditech is in breach of the loan agreement as a result of its allegedly inconsistent crediting of payments, Ditech is not entitled to foreclose. Plaintiffs cite as support *Interceramic, Inc. v. South Orient Railroad Company*, in which the court noted that "[w]hen a party *materially breaches* a contract, the other party may treat the contract as ended and cease performance. Thus, a party who fails to perform his obligation may not thereafter enforce the remaining terms of the contract against the other party." 999 S.W.2d 920, 924 (Tex. App.—Texarkana 1999, pet. denied) (emphasis added) (citing *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)). However, a party is only released from performance in such a manner if the other party is in *material* breach. *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 198 (Tex. 2004). "Texas courts follow the Restatement (Second) of Contracts in determining whether

a party has materially breached a contract, so as to discharge the other party's obligation to perform his contractual duties." *Mitchem v. Mortgage Elec. Registration Services, Inc.*, 3:12-CV-1762-M BH, 2013 WL 3870038, at *8 (N.D. Tex. July 26, 2013), *aff'd sub nom. Mitchem v. Fed. Nat. Mortg. Ass'n*, 571 Fed. App'x. 298 (5th Cir. 2014) (quoting *Chesson v. Hall*, No. CIV A H–01–315, 2007 WL 1964538, at *17 (S.D. Tex. July 3, 2007). "A breach is material if the injured party does not receive the substantial benefit of the bargain under the contract." *Id.* (quoting *Chesson*, 2007 WL 1964538, at *17).

Plaintiffs have provided no argument and have offered no summary judgment evidence to prove that Ditech's alleged inconsistent crediting of payments constitutes a *material* breach of the contract between the parties. Plaintiffs have not sued Ditech for breach of contract, nor have they made an argument under the Restatement (Second) of Contracts that they did not receive the substantial benefit of the bargain under that contract. Additionally, Plaintiffs' summary judgment evidence of inconsistent payments is not sufficient to create a fact issue, as analyzed previously in Part III.C. Instead, Ditech has provided sufficient evidence, not disputed by Plaintiffs, that Plaintiffs have not paid on their home equity loan since 2013 and that Ditech is entitled to foreclose on the property. Accordingly, summary judgment should be granted on Ditech's counterclaim and Ditech be authorized to proceed with foreclosure.

## CONCLUSION

Because no genuine issue of material fact exists as to any of Plaintiffs' claims or Ditech's counterclaim, the undersigned recommends that Judge O'Connor grant summary judgment to Ditech on all counts. Plaintiffs failed to establish a genuine issue of material fact on their action for unreasonable collection efforts, as they were unable to provide legally sufficient evidence that Ditech engaged in a course of harassment of the Plaintiffs. Likewise, Plaintiffs failed to raise a fact

issue on intentional or negligent misrepresentation on the part of Ditech, as there is insufficient evidence of detrimental reliance or injury from that reliance. Ditech should have summary judgment on all claimed violations of the Texas Debt Collection Act, as a threat of foreclosure when the borrower is in default is not a fraudulent, deceptive, or misleading representation under the TDCA; failing to provide an accounting is not a representation and therefore is not a violation of the TDCA; and there is insufficient evidence to prove improper crediting of payments or statement of an incorrect balance owing. Finally, Ditech is entitled to summary judgment on its counterclaim for foreclosure, as all of the summary judgment evidence confirms that the loan is in default and Ditech is within its right to foreclose.

For the foregoing reasons, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Ditech's Motion for Summary Judgment (ECF No. 24) and enter summary judgment for Ditech on all claims and counterclaims.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed September 11, 2017.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE